# Wm. Wilson & Son Silversmith Co.'s Estate. Commonwealth's Appeal.

*Taxes—Liens—Filing copy—Repeal of statutes—Acts, 1827, 1879.*

To entitle a tax lien under the Act of 1879 to priority, a certified copy must be filed under the Act of 1827.

The Act of April 14, 1827, § 4, requiring a certified copy of tax liens, arising under the Act of March 30, 1811, § 12, to be filed before they should have priority over lien creditors, is not repealed, expressly or by implication, by the Act of June 7, 1879, § 14, P. L. 119, providing that all taxes imposed by that Act shall be a lien upon the franchises and property, both real and personal, of corporations and limited partnerships, from the time said taxes are due and payable; and, whenever such franchises and property shall be sold at a judicial sale, all taxes due the commonwealth shall be first paid before any judgments, mortgages or other claims which shall be entered of record or become a lien after the passage of that Act, and expressly repealing all inconsistent laws. The statutes are *in pari materia.* The system provided by the Act of 1811 for the settlement of taxes applies to taxes imposed by later legislation. Hence the Act of 1827 is applicable to the settlement of taxes under the Act of 1811, whether they are created by that Act, or Acts of later date. Arnold's Est., 46 Pa. 277, and Wilson's Case, 4 Pa. 164, applied.

*Tax on corporate franchises—Property embraced.*

The Acts of 1811 and 1879, include every form of liability for public money retained from the public treasury; in this case, moneys due from a corporation assigned estate, being taxes on the capital stock of the company upon settlement of their accounts by the auditor general: Com. v. Easton Bank, 10 Pa. 442, applied.

Argued Jan. 25, 1892. Appeal, No. 29, Jan. T., 1892, by the Commonwealth, from the decree of C. P. No. 1, Phila. Co., March T., 1886, No. 659, dismissing exceptions to the disallowance of tax claims and confirming report of auditor distributing assigned estate. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

The facts appear by the opinion of the Supreme Court.

The auditor, Frank M. Wirgman, found (1) that the rights of the Commonwealth were governed by the Act of April 14, 1827, § 4; and (2), because no certified copy of the tax lien was filed, the Commonwealth had no lien; (3) he accordingly disallowed the claim.

Exceptions were dismissed; this appeal was then taken.

*Errors assigned* were (1–3) dismissal of exceptions, quoting them; and (4) confirmation of report.

*Rudolph M. Schick, W. U. Hensel*, Attorney General, with him, for appellant.

*John G. Johnson* and *Charles E. Pancoast*, for appellee.

OPINION BY MR. JUSTICE GREEN, July 13, 1892.

We think the decisions of this court in the cases of Commonwealth's Appeal, in Wilson's Est., 4 Pa. 164, and in Arnold's Estate, 46 Pa. 277, control the determination of the present contention. In both of them it was held that, although the Act of 1811 gave a lien in favor of the commonwealth for the balance found due upon the settlement of accounts of county officers, against all the lands of such officers throughout the commonwealth, such lien could not be enforced against other lien creditors of the delinquent officer unless a certified copy of the account was transmitted to the prothonotary of the county where the accounting officer resides, and the same was entered of record according to the provisions of the Act of 1827. In the first of these cases Mr. Justice Burnside said: " Our law of liens is well settled. It requires in all who claim a lien by legislative provision, to comply with those provisions. . . . The commonwealth's lien on the land of her debtor is created and exists in pursuance of the Acts of the Legislature. Both Acts are to be taken to-

gether.   Our Legislature have uniformly discountenanced
all liens and encumbrances from transactions that do not ap-
pear of record: 7 S. & R. 73.   The Acts of 1811 gave the
commonwealth a lien on all the lands of the debtor within the
state.   The Act of 1827 did not abridge that lien, but made
it the duty of the auditor general to file the lien in the county
where the debtor resided for the purpose of notice.   Every
citizen interested could go there and examine; and if the au-
ditor general had done his duty he could have saved the lien
of the commonwealth.   The settlement not being placed of
record in Washington county the lien created by the first Act
was not notice to judgment creditors."   All this was re-affirmed
and enforced in the case of Arnold's Estate, *supra*.

The 14th section of the Act of 1879, P. L. 112, gives the
commonwealth a lien for all taxes, imposed by that Act, upon
the franchises and property, real and personal, of corporations
and limited partnerships, and also directs that, in all cases of
judicial sales of the franchises or property of corporations and
limited partnerships, all taxes due the commonwealth shall
first be allowed and paid out of the proceeds of such sales.
The 18th section of the Act of 1879 repeals all laws inconsist-
ent with that Act, but as there is no inconsistency between
the Acts of 1811 and 1827, and the Act of 1879 in reference
to the collection of moneys due the commonwealth, we cannot
consider that they are affected by the repealing clause of the
Act of 1879.   Being still in force therefore we are obliged to
hold that their provisions must be complied with in order to
enforce the collection of the claims of the commonwealth,
when they are in hostility to the claims of lien creditors in the
county where the delinquent debtor resides.   As that was not
done in this case the lien falls for the same reason expressed
in the cases above cited.   We do not see how we could hold
otherwise unless we are prepared to hold that the lien given
to the commonwealth is a specific lien upon each item of per-
sonal property in question so as to follow it in whatever hands
it may be found.   We could not possibly hold such a doctrine,
as it would affect all the business carried on by corporations and
limited partnerships with such an extremely oppressive and
onerous liability as to destroy it altogether.  We have never
held such a liability by way of lien as this, and it would be

entirely hostile to the spirit of our laws and the free inter-
change of commodities among our citizens.

In the case of Arnold's Estate, *supra*, Strong, J., said that
the Acts of 1811 and 1827, "being *in pari materia* must be
construed together, and that, under the provisions of the two
Acts, the commonwealth has no priority over the liens of judg-
ment creditors and mortgagees of the debtor, whose liens had
attached before a copy of the account, as settled by the auditor
general, was entered of record in the proper county.   Without
the notices given by filing a copy of the balance of the account
and having it entered on record, the debt ascertained to be
due the commonwealth may be a lien as against the debtor but
it is inoperative as against other lien creditors."

Applying this ruling to the facts of this case it will be seen
that when the assignment of the William Wilson Silversmith
Company was made on March 29, 1886, to the Guarantee Trust
Company for the benefit of creditors, the personal property
passing by the assignment was subject to the lien of the sev-
eral executions issued against the assignor on March 27, 1886,
and the liens of those writs were not affected by the common-
wealth's claim of lien for taxes because no copy thereof had
been filed in the office of the prothonotary of the county of
Philadelphia or entered of record there.   The Guarantee
Trust Co. having purchased the several judgments and execu-
tions against the assignor, succeeded to the rights of the exe-
cution creditors, and, as against them, the property passed to
the assignee free of any lien of the commonwealth for the taxes
in question.   Having the rights of prior lien creditors there-
fore, under the decision in Arnold's Estate, they are not af-
fected by any claim of lien on the part of the commonwealth
in the distribution of the proceeds of the goods of the assignor.

In the case of the Commonwealth v. Easton Bank, 10 Pa.
442, it was held that the Act of 1811 included every form of
liability for public money retained from the public treasury.
It was said by Bell, J., in delivering the opinion of this court:
"As the statute is remedial, and in practice found to be very
beneficial, the courts have been liberal in its construction.   Its
operation has not been confined, as the bank seems to think it
ought, to technical accounts; but has been extended to em-
brace every case where one retains public money which ought

to be paid into the public coffers, no matter under what appellation received. Whether called tax or dividends, or portions of fees of office, the sums received for, and retained from, the public use fall within the purview of the Act: Commonwealth v. Reitzel, 9 W. & S. 109; Hutchinson v. Commonwealth, 6 Barr, 124."

The moneys due from the assignor in this case being taxes on the capital stock of the company upon settlement of their accounts by the auditor general are clearly embraced within the decision above quoted. The language of the Act of 1811, § 12, Bright. Purd. 1386, pl. 29, is quite as efficacious in giving a lien to the commonwealth as is the language of the Act of 1879, § 14, P. L. 119. The Act of 1811 provides that "the amount or balance of every account settled agreeably to this Act, shall be deemed and adjudged to be a lien from the date of the settlement of such account on all the real estate of the person or persons indebted and on his or their securities, throughout the commonwealth." The Act of 1879 directs "that all taxes imposed by this Act shall be a lien upon the franchises and property both real and personal of corporations and limited partnerships from the time the said taxes are due and payable."

Under the first Act the amount due is "deemed and adjudged to be a lien" upon all the lands of the debtor and his sureties. Under the second Act the tax imposed "shall be a lien upon the franchises and property, both real and personal, of corporations and limited partnerships from the time the said taxes are due and payable." In the one case a lien upon land is given and in the other a lien upon franchises and all property, personal as well as real, is conferred. But the difference in the subjects of the lien and the persons against whom it is given, certainly cannot alter the law as to the duty of the commonwealth in order to obtain any lien at all as against other lien creditors. That remains the same according to the decisions of this court above cited. The Act of 1827, § 4, Purd. 1386, pl. 30, prescribes the duty of the auditor general in all cases arising under the Act of 1811, and although that act does not declare that the lien shall not prevail if the duty to file a certified copy is not performed, yet we have held that such is the consequence of a non-compliance with the act. The

spirit of those decisions is precisely the same under the Act of 1879.   Other lien creditors have the same right to notice under the Act of 1879 as under the Acts of 1811 and 1827, and we can see no reason why the rule of duty applicable in the one class of cases is not equally applicable in the other.   No new or independent jurisdiction for the settlement of accounts is provided by the Act of 1879.   The taxes imposed by that act are to be adjusted by the same officer, and in practically the same manner, as under the Act of 1811.   The system provided by the latter act still prevails in the settlement and adjustment of accounts due the commonwealth, and all new and additional taxes imposed by later legislation are adjusted under that system.   Hence the Act of 1827, which prescribes the duty of filing a copy in the county of the debtor is just as applicable to the settlement of taxes under the Act of 1811, whether they are created by that act or by acts of later date.   We find nothing in the Act of 1879 which conflicts, or is inconsistent, with this view of the subject.   The reasons of public policy, which is averse to secret liens, are quite as applicable against taxes created by the Act of 1879 or any other acts as they were against such liens under the Acts of 1811 and 1827.

The tax on bank shares under the Acts of 1867 and 1868, Bright. Purd. 173 and 174, has no analogy to the present case. Those taxes are made a specific lien on the shares in the hands of the banks, and the bank officers are required to collect the tax from the shareholders and pay it directly into the state treasury.   No system of accounting and collecting through the public officers of the commonwealth is provided and there is no necessity for filing a copy of the commonwealth's claim as provided by the Act of 1827.

Upon the whole case we think the auditor and court below were correct in their disposition of the claim of the commonwealth.

Decree affirmed and appeal dismissed at the cost of the appellant.