## Ferguson's Estate.

Argued November 24, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

C. James Todaro, with him Charles J. Margiotti, Attorney General, John Y. Scott, Deputy Attorney Gen-

eral, and *Michael A. Spatola,* Special Deputy Attorney General, for appellant.

*William C. Ferguson, Jr.,* of *Saylor, Slocum & Ferguson,* for appellees.

Opinion by Mr. Justice Linn, January 11, 1937:

At the audit of the executors' account, the Commonwealth presented a claim, described in the adjudication as "unpaid sales tax,"[1] in the admitted sum of $82.70. The amount for distribution was not sufficient to pay decedent's debts in full. The Commonwealth contended that its claim was a "first lien upon the . . . property, both real and personal, of" decedent under Section 1401[2] of the Fiscal Code of 1929, P. L. 343, 72 PS section 1401, and demanded priority of payment. On the other hand accountants contended that the debt to the Commonwealth must "be last paid," under section 13(a) of the Fiduciaries Act of 1917, P. L. 447, 20 PS section 501. The learned court below held that distribution was governed by the Fiduciaries Act and rejected the claim for priority of payment. The Commonwealth appealed.

The question is whether the Fiscal Code of 1929, by implication, repealed so much of section 13(a) of the Fiduciaries Act as stated the order of distribution of an insolvent decedent's estate and declared that debts due the Commonwealth "shall be last paid."

It is well settled that a statute will not repeal another by implication unless the two cannot stand together; the legislative intent to repeal must be clear: *Com. v. Provident Trust Co.,* 287 Pa. 251, 257, 134 A. 377; *Com. v. Meyers,* 290 Pa. 573, 139 A. 374. In *Toner's Estate,* 260 Pa. 49, 103 A. 541, the court dealt with the contention

---

[1] Pursuant to the Act of August 19, 1932, (Special Session of 1932, page 92) imposing an emergency sales tax for state purposes upon sales of tangible personal property.

[2] This section is quoted later; it was amended June 3, 1933, P. L. 1474, 1482; and June 11, 1935, P. L. 303.

of implied repeal in circumstances quite like those now presented and quoted the well known rule, which must now be applied. The court said: "It is established that 'where a statute merely re-enacts the provisions of an earlier one, it is to be read as part of the earlier statute, and not of the re-enacting one, if it is in conflict with another passed after the first but before the last act; and therefore it does not repeal by implication the intermediate one' (Endlich on the Interpretation of Statutes, Section 194) ; or as expressed in 36 Cyc. 1084, 'Nor does a later law, which is merely a re-enactment of a former, repeal an intermediate act which qualifies and limits the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first'; see also Lewis's Sutherland on Statutory Construction, Section 273, and *Searight's Est.*, 163 Pa. 210, 216-18." (Id. 57.) That principle is peculiarly applicable to the construction of both the Fiscal Code and the Fiduciaries Act and their relation to each other as indicating legislative intent. These two statutes are re-enactment and revision of earlier statutes, on two subjects of legislation that stand out in our law, and continuing, by each act, a legislative policy established more than a century ago and consistently applied ever since.

It is well known that our law of Decedents' Estates has developed from colonial times into a body of jurisprudence distinguished by characteristics generally recognized and administered by the Orphans' Court in the exercise of jurisdiction well established. From 1832 to 1834, pursuant to the recommendation of a commission appointed to revise and codify the law on the subject of Decedents' Estates (see resolution of Mar. 23, 1830, P. L. 408) five acts covering the subject were passed. During the next eighty years more than 200 amendments to these acts were adopted. In 1915 it was again considered desirable to have the whole subject re-examined, with the result that in 1917, on the recommendation of

the commission,[3] the law of Decedents' Estates was re-enacted and revised in a series of acts,[4] among them, the Fiduciaries Act of which section 13(a) is now in question. It provides as follows: "Section 13. (a) All debts owing by any person within this State at the time of his decease shall be paid by his executors or administrators, so far as they have assets, in the manner and order following; namely,—One, funeral expenses, medicine furnished and medical attendance given during the last illness of the decedent, and servants' wages, not exceeding one year; two, rents, not exceeding one year; three, all other debts, without regard to the quality of the same, except debts due to the Commonwealth, which shall be last paid." The preferential order of payment (described in *Wade's Appeal*, 29 Pa. 328, as "that most meritorious class of claims to which sickness and death give rise") was established in the early days of the Commonwealth,[5] and re-enacted from time to time.[6]

While this body of law on the subject of Decedents' Estates was growing, another quite distinctive system of law—that relating to taxation for state purposes—

---

[3] Report of the Commission to Codify and Revise the Law of Decedents' Estates, pages 1 and 2.

[4] Intestate Act; Wills Act; Fiduciaries Act; Orphans' Court Partition Act; Revised Price Act; Register of Wills Act; Orphans' Court Act; 1917 P. L. 337 to 559.

[5] Act of April 19, 1794, 3 Sm. L. 143, 148, in section 14, provided "That all debts owing by any person within this state, at the time of his or her decease, shall be paid by his or her executors or administrators, so far as they have assets, in the manner and order following: First, physic, funeral expenses, and servants wages; Second, rents not exceeding one year; Third, judgments; Fourth, recognizances; Fifth, bonds and specialities; and that all other debts shall be paid without regard to the quality of the same, except debts due to the Commonwealth, which shall be last paid; . . ."

[6] Section 21 of the Act of February 24, 1834, P. L. 73, re-enacted in section 13(a) of the Fiduciaries Act. For an earlier preference of funeral expenses see Act of 1697, Duke of Yorke's Laws, 231, 265.

was developing. The earliest statute on that subject to which we need refer was the Act of 1811,[7] 5 Sm. L. 228, section 12, providing: "That the amount or balance of every account settled agreeably to this act due to the Commonwealth, shall be deemed and adjudged to be a lien from the date of the settlement of such account on all the real estate of the person or persons indebted, and on his or their securities throughout this Commonwealth."

The provisions of that section remained in force (*Schoyer v. Comet Oil & Refining Co.*, 284 Pa. 189, 195, 130 A. 413, 1925) and, with revisions, were carried into section 1401 of the Fiscal Code, which, in section 1805(b) expressly repealed section 12 of the Act of 1811.

The Act of 1811 had been found to be defective in not providing a method of giving notice of the lien; the omission was supplied by section 4 of an Act of April 14, 1827, 9 Sm. L. 433, providing for record of the lien: see *Commonwealth's Appeal*, 4 Pa. 164 (1846). This provision has also been carried into the Fiscal Code in section 1404, though we are not now required to consider the difference in effect of the mandatory phrasing of the Act of 1827 and the permissive words of section 1404, as to which, however, see *Kauffelt v. Bower*, 7 S. & R. 64, 73; *Wm. Wilson & Son Silversmith Co.'s Estate*, 150 Pa. 285, 24 A. 636. Laying aside other statutes providing for state taxation enacted in the interim, the next one to be noted is the Act of 1879, P. L. 112, entitled "To provide revenue by taxation" from which we quote sections 14 and 15 for purposes of comparison with the Fiscal Code. "Section 14. That all taxes imposed by this act shall be a lien upon the franchises and property, both real and personal, of corporations and limited partnerships, from the time the said taxes are due and pay-

---

[7] It was entitled "An Act to amend and consolidate the several acts relating to the settlement of the public accounts, and the payment of the public monies, and for other purposes."

able; and whenever the franchises or property of a corporation or limited partnership shall be sold at a judicial sale, all taxes due the Commonwealth shall first be allowed and paid out of the proceeds of such sale, before any judgments, mortgages or other claims which shall be entered of record or become a lien after the passage of this act."

"Section 15. That no corporation or limited partnership made taxable by this act shall hereafter be dissolved by the decree of any court of common pleas, until all taxes due the Commonwealth have been fully paid into the state treasury, and the certificate of the auditor general, state treasurer, and attorney general to this effect filed in the proper court, with the proceedings for dissolution."

The effect of this Act of 1879 on the prior Acts of 1811 and 1827 was considered in *Wm. Wilson & Son Silversmith Co.'s Estate,* 150 Pa. 285, 24 A. 636, and in *Goodwin Gas Stove & Meter Co.'s Estate,* 166 Pa. 296, 31 A. 91. Subsequent revisions were made by the Act of June 1, 1889, P. L. 420, the Act of June 15, 1911, P. L. 955, and several later acts that need not be mentioned. These sections as amended, were then carried into the Fiscal Code, sections 1401 to 1404 dealing comprehensively with them. Section 1401 is as follows: "Liens of Taxes, Interest, Penalties, and Other Accounts Due to the Commonwealth.—All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus, interest, penalties, and all public accounts settled against any corporation, association, or person, shall be a first lien upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement, and whenever the franchises or property of a corporation, association, or person, shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts, due the Commonwealth, shall first be allowed and paid out of the pro-

ceeds of such sale, before any judgment, mortgage, or any other claim or lien against such corporation, association, or person, but the lien of transfer inheritance taxes shall be limited to the property chargeable therewith, and, unless such taxes shall be sued for within five years after they are due, they shall cease to be a lien as against any purchaser of real estate."

Section 1402 deals with the sale by sheriff, receiver, trustee, assignee, master, or other officer of the property or franchises of any corporation, limited partnership, or joint-stock association; section 1403 with bulk sales or sales of real estate of corporations, joint-stock association, limited partnership or company. Section 1404 provides a method of obtaining a record lien and judgment on scire facias.

The argument of the Commonwealth is based on the words of Section 1401 providing that the Commonwealth shall have a first lien on the property of any person (cf. Section 12 of the Act of 1811); it is said that this indicates legislative intention, by implication, to repeal the provision in section 13(a) of the Fiduciaries Act which provided that in distributing the assets of an insolvent decedent the Commonwealth should be last paid. The contention that there was an implied repeal must be rejected. Section 1802, P. L. 439, 72 PS section 1802, of the Fiscal Code provides: "Continuance of Existing Laws.—The provisions of this act, as far as they are the same as those of existing laws, shall be construed as a continuation of such laws, and not as new enactments." As this provision was not considered in the briefs, it has been deemed desirable, so that the effect of section 1802 might more clearly appear, to recite at some length the provisions of the earlier statutes which, as revised, were carried into the Fiscal Code. If there could have been any doubt, in the absence of section 1802, of the application of the general rule of construction of the code (*Commonwealth v. McNamara*, 93 Pa. Superior Ct. 267, 271; *Haspel v. O'Brien*, 218 Pa. 146, 149, 67 A. 123;

*Toner's Estate,* 260 Pa. 49, 103 A. 541) section 1802 removes it. Moreover, the character of the development side by side, over the long period in question, of the law of Decedents' Estates and of the state revenue laws, is convincing that there was no legislative intention to repeal by implication.

The Commonwealth cited *Metcalf's Estate,* 319 Pa. 28, 179 A. 587 (1935) in support of its position. In that case it was held that the Fiduciaries Act by implication repealed section 7 of the Act of June 1, 1915, P. L. 661, 71 PS section 1787, on the ground that the provisions of section 7 dealt with the distribution of an insolvent estate. It provided that when a claim was made on behalf of the Commonwealth, or on behalf of any county or poor district, for reimbursement of moneys expended by the state, county, or poor district in the maintenance of insane, feeble-minded, or other persons confined in institutions of the Commonwealth, that the state and county should share in the proportion of the amount of maintenance expense. Section 13(a) of the later Act expressly dealt with the same subject and was so inconsistent with it that both could not stand. It was held that the Commonwealth must be last paid.

It cannot be supposed, although this is what the Commonwealth's argument comes to, that in 1811, for example, the legislature intended by implication to modify the provision of the Act of 1794 governing the distribution of an insolvent decedent's estate, and subsequently, by the Decedents' Estate legislation of 1834, intended by implication to modify the taxing act of 1811 by restoring the provisions of the Act of 1794, and thereafter from time to time to repeat this conflict between the Taxing and the Decedents' Estates legislation in 1879, 1917 and 1929. If such radical departure from legislative policy had been intended by the Fiscal Code it would have been clearly indicated in the title as required by Article III, section 3, of the Constitution. While the title, abstractly considered, is very comprehensive, it must be

construed in the light of the established legislative policy of the state which, as to the Decedents' Estates legislation, was established long before the Constitution of 1874, and, since that time has been recognized as a well defined body of our law.

The decree is affirmed, costs to be paid out of the fund.