## Frola's Petition

358

*Milford L. McBride*, for petitioner.
*Emrys G. Francis*, for respondent.

ROWLEY, P. J., December 9, 1943.—Joseph F. Frola, a purchaser of certain land sold for unpaid taxes, presented his petition for a rule to show cause why his title to said land should not be adjudicated, and decreed valid and indefeasible as against all rights or claims whatsoever.

Authority for such a petition is found in the Act of July 18, 1917, P. L. 1072, as amended by the Acts of

May 9, 1923, P. L. 182, and May 31, 1923, P. L. 477, 72 PS §6144, and also in the Act of May 16, 1919, P. L. 180, as amended by the Acts of April 11, 1939, P. L. 22, and July 28, 1941, P. L. 537, 72 PS §6139.

The procedure under the two series of statutes is substantially identical. . . .

The briefs of both parties state "the case is free from procedural difficulties".

The Act of April 11, 1939, P. L. 22, sec. 2, as amended, provides that upon issue of the rule, "If any person or persons shall appear and make answer to said petition, the court shall thereupon order and decree that such person or persons shall begin proceedings to establish his or their title or interest in, or claim against, said land within ninety days thereafter . . ."

In Meyers v. Manufacturers & Traders Nat. Bank of Buffalo et al., 332 Pa. 180, the court said (p. 183) :

" 'The statute, providing as it does for a rule to show cause why the title of the petitioner should not be adjudicated and decreed valid, contemplates that when the rule is answered, it shall be judicially determined whether cause has been shown. If it has been, by the showing of title in the respondent which as matter of law establishes his right to the land, and this is undenied, then the court should adjudicate and decree the petitioners' title to be invalid and should dismiss his petition. If, however, on the petition and answer as filed or after the traverse of the answer the court should be of opinion that the tax title set up by the petitioner warrants an issue to determine whether his title or that averred by the answer is the valid one, it should then order and decree that the respondent begin proceedings to establish his title.' "

The instant parties seem to assume that the Act of 1939 empowers the court to determine in this proceeding, not whether title to the land is in the petitioner or in the respondent, but whether respondent has a lien upon the title.

Inasmuch as there is no dispute as to the material facts, there is nothing to warrant an issue. Therefore we accept the question as submitted.

### Questions involved

Petitioner states the questions involved thus:

"1. Is a judgment lien in favor of the Department of Public Assistance of the Commonwealth of Pennsylvania divested on sale of defendant's land at county treasurer's sale to the county?"

"2. Is a judgment in favor of the Department of Public Assistance subject to the same rules, conditions, priorities and limitations as any other judgment when property of the defendant is sold at tax sale?"

Respondent states the questions as follows:

"1. Where land is sold by the county commissioners for the nonpayment of filed taxes under the Act of June 20, 1939, P. L. 498, 72 PS §§5970a, 5971a, does such a sale divest the lien of judgment of the Commonwealth of Pennsylvania, said judgment being against the owner of said property against whom said taxes were filed and said judgment being given for the repayment of public assistance granted to the said owners.

"2. Under the same circumstances, is the Commonwealth entitled to priority of payment with respect to the funds received at the said tax sale?"

### Findings of fact

The following facts are undisputed:

1. On July 5, 1939, there was filed in the office of the Prothonotary of the Court of Common Pleas of Mercer County, at no. 244, June term, 1939, a bond in the sum of $500 executed to the Commonwealth of Pennsylvania by Carter Irwin, who was then the owner of the land which is the subject of this proceeding. The bond was conditioned that the facts contained in obligor's application for assistance be true.

2. On July 5, 1939, the prothonotary entered judgment on the bond for $575, which included an attorney's commission of 15 percent for collection.

3. On January 29, 1940, the county treasurer sold the real estate of Carter Irwin as seated land, for non-payment of municipal (county, road, and school) taxes for the years 1929 to 1939, inclusive, then due in amounts of $633.99. The land was purchased by the County of Mercer.

4. The land so sold was not redeemed.

5. On May 7, 1940, some four months after the tax sale, there was filed in the office of the prothonotary at no. 554, March term, 1940, a reimbursement agreement executed by Carter Irwin. The purpose of the agreement, as stated therein, was "to give the Department of Public Assistance a lien on any property owned by me at the time of my application for assistance, or in which I acquire a property interest while receiving assistance."

The agreement contained a warrant to confess judgment in the sum of $2,000.

On May 7, 1940, the prothonotary entered judgment upon that agreement against Carter Irwin for $2,000.

6. On March 2, 1942, the county treasurer conveyed to the County of Mercer the land of Carter Irwin, hereinbefore described, which had been purchased by the County of Mercer at the tax sale on January 29, 1940.

7. On August 17, 1942, the County of Mercer conveyed the aforesaid premises to Walter E. Smith.

8. On May 15, 1943, Walter E. Smith sold the premises to Joseph F. Frola, the instant petitioner, upon a land contract.

## Discussion

Respondent's answer contends that the title of the petitioner, Frola, is subject to the liens of the judgments entered by respondent against Carter Irwin, viz, judgment for $575 entered on July 5, 1939, and judgment for $2,000 entered May 7, 1940.

To this claim of respondent, petitioner replies that the judgment of $2,000 never became a lien on the

Carter Irwin real estate because the land was sold by the county treasurer at tax sale on January 29, 1940, before the judgment was entered in the office of the prothonotary. Petitioner says further that the judgment for $575 was discharged by the tax sale of January 29, 1940. In support of this latter claim petitioner quotes the following from the Act of May 29, 1931, P. L. 280, as last amended by the Act of June 20, 1939, P. L. 498, sec. 5, PS §5971 i:

"Every such sale shall discharge the lien of every obligation, claim, lien or estate with which said property may have or shall become charged or for which it may become liable, except no such sale shall discharge the lien of any ground rent, municipal claim or tax remaining unpaid or mortgage . . . recorded before such taxes became liens, by return and docketing . . .

"When any real estate is so sold, no lien whatsoever against such real estate shall be deemed to be discharged during the period for redemption; but if such real estate is not redeemed, then all liens against the same, except such liens as are hereinbefore specifically saved, shall be deemed to be discharged from the date that the right of redemption expired."

To this argument of petitioner, respondent replies that its claims are not ordinary judgments. Respondent says these judgments are "public accounts" and "are equivalent in every respect to moneys which are owed to the Commonwealth for taxes".

Respondent plants its case squarely upon The Fiscal Code of April 9, 1929, P. L. 343, as amended. We quote the following from respondent's brief:

"The contention of the Commonwealth that the aforementioned liens are not divested is based upon the Act of 1929, P. L. 343, as amended by the Acts of June 3, 1933, P. L. 1474, and June 11, 1935, P. L. 303 (72 P. S. 1401). This act is known as The Fiscal Code. The pertinent portion of the act is as follows:

" 'All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus, interest, penalties, and all public accounts settled against any corporation, association, or person, shall be a first lien upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement, and whenever the franchises or property of a corporation, association, or person shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts due the Commonwealth shall first be allowed and paid out of the proceeds of such sale before any judgment, mortgage, or any other claim or lien against such corporation, association or person: Provided, however, Where the lien of a ground rent, mortgage, or other lien created by or entered against a predecessor in title to such corporation, association, or person is discharged by a judicial sale, the lien of the Commonwealth shall be transferred from the property sold to the fund realized from the sale, and the purchaser shall take free of the lien of the Commonwealth, notwithstanding that the fund may be insufficient to pay all or any part of the same, and on distribution of the fund, the Commonwealth's lien shall be postponed in payment to said lien or liens created by or entered against such predecessor in title, but shall not be postponed in payment to local taxes or municipal claims.' "

Inasmuch as respondent stands on The Fiscal Code of April 9, 1929, P. L. 343, as amended, it is necessary to examine that statute, with appropriate attention to the statutes which it supplanted.

If respondent's claims were a first lien by virtue of the Act of 1929, then they were not discharged by the sale for local taxes.

The account settled by the Auditor General at common law gave the Commonwealth no lien. The Commonwealth's lien on the land of the debtor is created and

exists in pursuance of the acts of the legislature: In re Wilson, 4 Pa. 164, 165.

The Act of March 30, 1811, 5 Sm. L. 228, which has been supplanted by The Fiscal Code of 1929, P. L. 343, as amended, provided (sec. 1):

". . . all accounts between the commonwealth and any person or persons, body politic or corporate, as well those with the officers of the revenue as other persons entrusted with the receipt, or who have or hereafter may become possessed of public money, also the accounts of all persons having claims on the commonwealth, except as are hereinafter excepted, shall be examined and adjusted by the auditor-general according to law and equity."

This act provided that such accounts should be examined and adjusted by the Auditor General, and thereafter submitted to the State Treasurer for approval. The act provided for an appeal by the taxable from the settlement to the court of common pleas.

Section 12 of that act provided:

"The amount or balance of every account settled agreeably to this act due to the commonwealth, shall be deemed and adjudged to be a lien from the date of the settlement of such account on all the real estate of the person or persons indebted, and on his or their securities throughout this commonwealth."

The Act of April 16, 1827, P. L. 471, sec. 4, required the Auditor General to transmit to the prothonotaries of the respective counties, to be by them entered of record, certified copies of the liens thereafter arising under the Act of 1811, supra.

In In re Wilson, 4 Pa. 164, and in Arnold's Estate, 46 Pa. 277, the court held that without the notice given by filing a copy of the balance of the account, and having it entered of record, the debt was inoperative as a lien against other lien creditors (notwithstanding that the Act of 1827 did not declare that the omission to transmit the lien to the prothonotary should have such effect).

The Act of June 7, 1879, P. L. 112, imposed certain taxes upon corporations and limited partnerships, and provided for settlement of accounts by the Auditor General and State Treasurer. This act also provided:

"Section 14. That all taxes imposed by this act shall be a lien upon the franchises and property, both real and personal, of corporations and limited partnerships, from the time said taxes are due and payable . . ."

Notwithstanding such provision, the Supreme Court in Commonwealth v. Central Realty Co., 338 Pa. 172, 176, said:

"In Wm. Wilson & Son Silversmith Co.'s Assigned Est., 150 Pa. 285, 24 A. 636, we again sustained the mandatory provision of the Act of 1827, supra, with respect to the filing of liens for Commonwealth taxes in the respective counties, as affected by the Act of 1879, supra, and again held that unless this was done the tax failed of priority as against judgment creditors." (The Act of June 7, 1879, P. L. 112, sec. 14, although it was held not to have repealed the Act of 1811, supra, was so similar to it as to be almost identical: Commonwealth v. Central Realty Co., supra.)

The Act of June 1, 1889, P. L. 420, sec. 31, extended the scope of the Act of 1879. The later act provided:

"Section 31. That all taxes imposed by this act shall be a lien upon the franchises and property, both real and personal, of corporations, companies, associations, joint-stock associations and limited partnerships, from the time the said taxes are due and payable . . ."

In Gladden, to use, v. Chapman, 188 Pa. 586, the Act of June 1, 1889, P. L. 420, sec. 31, was likewise construed to require the entry of the Commonwealth's lien in the county in order to avoid postponement to the claims of judgment creditors of the taxable: Commonwealth v. Central Realty Co., supra.

The foregoing authorities emphasize the necessity of compliance with the terms of a statute which creates a lien in order to preserve such lien.

The requirement of transmission of liens to the prothonotary by the Auditor General was repealed by the Act of June 15, 1911, P. L. 955.

The Act of June 15, 1911, P. L. 955, substantially reenacted the provisions of the prior Acts of 1811, 1879, and 1889, and directed that ". . . all State taxes imposed under the authority of any law of this Commonwealth now existing or that may hereafter be enacted, and unpaid bonus, interest, penalties, and all public accounts settled against any corporation, company, association, joint-stock association, or limited partnership, shall be a first lien upon the franchise and property, both real and personal, of such corporation, company, association, joint-stock association, or limited partnership [note that "person" is not included], from the date when they are settled by the Auditor General and approved by the State Treasurer . . ."

In Commonwealth v. Central Realty Co., supra, the court said that the foregoing section of the Act of June 15, 1911, supra, 72 PS §3342, was amended by the Act of April 12, 1923, P. L. 63, and has been continued in force by the almost identical provision of section 1401 of The Fiscal Code of April 9, 1929, P. L. 343, as last amended by the Act of June 11, 1935, P. L. 303, 72 PS §1401.

In Commonwealth v. Central Realty Co., supra, it was declared that after enactment of the Act of 1911 "It was thenceforth sufficient, in order to establish the lien, for the Commonwealth to settle the tax in the auditor-general's office in Harrisburg."

The Act of April 12, 1923, P. L. 63, amended the Act of 1911, supra, by adding that where the Auditor General alone makes the settlement the lien shall date from such settlement. The Act of 1923 also added a provision for employment of counsel by the Auditor General.

Section 201 of The Fiscal Code of April 9, 1929, P. L. 343, provides:

"Section 201. Powers and Duties Transferred. Except as otherwise in this act provided, the Department of Revenue shall exercise the powers and perform the duties heretofore exercised and performed by the Auditor General, the State Treasurer, the Insurance Commissioner, and all other departments, boards and commissions of the State Government, in the settlement of taxes, and the collection of taxes, license fees, and other moneys due the Commonwealth."

Section 801 of The Fiscal Code of 1929, P. L. 343, provides:

"(a) All settlements of taxes and bonus due the Commonwealth, which have heretofore been made by the Auditor General, or by the Auditor General and State Treasurer, shall, after the effective date of this act, be made by the Department of Revenue.

"(b) All such settlements shall, as far as possible, be so made that notice thereof may reach the taxpayer at least (60) days before the end of the year succeeding the year for which the tax or bonus report or return was made or ought to have been made."

Article IX of the Act of 1929 provides for settlement by the Department of Revenue of accounts of city and county officers who receive moneys for the use of the Commonwealth.

Article X of the Act of 1929 provides for settlement by the Department of Revenue of other accounts between the Commonwealth and its debtors.

Section 1101 of The Fiscal Code of 1929 provides:

"(a) Promptly after the date of any settlement, the Department of Revenue shall send, by mail or otherwise, a copy thereof to the party with whom or with which the settlement was made."

Other sections of the Act of 1929 make provision for review of the settlement upon petition of the taxpayer, and for appeal to the courts.

The Fiscal Code of 1929, sec. 1401, substantially re-enacted section 1 of the Act of 1911, except that in the Act of 1929 the lien was declared to be upon the property of "such corporation, association, or person", whereas in the Act of 1911 the lien was upon the property of "such corporation, company, association, joint-stock association, or limited partnership".

The Act of 1911 declares that the liens shall exist "from the date when they are settled by the Auditor General and approved by the State Treasurer".

The Act of 1929 declares that the lien shall exist "from the date of settlement".

The Act of June 3, 1933, P. L. 1474, amended section 1401 of The Fiscal Code of 1929 by providing for transfer of the lien from the property to the fund realized from the sale, in exceptional cases.

The Act of June 11, 1935, P. L. 303, 72 PS §1401, further amended section 1401 of the Act of 1929 by a provision for release of a portion of the liened premises.

But the Act of 1935, supra, repeated the declaration that State taxes, unpaid bonus, interest, penalties, and all public accounts should be a lien "from the date of settlement".

It may seem that we have given undue attention to the Act of 1811 and succeeding reënactments and amendments, but in our opinion respondent's claim to a lien on petitioner's title to the real estate involved rests upon the construction of those statutes.

Counsel for respondent quotes the following from Commonwealth v. Lowe Coal Co., 296 Pa. 359, 364:

"State taxes stand on a different basis from local levies; the former are essential to the very 'preservation' of the State itself (Schoyer v. Comet O. & R. Co., 284 Pa. 189, 193), while the latter are authorized or permitted by the State, not for its actual preservation, but merely to maintain the machinery of local government . . .

"Though the body of our Pennsylvania law, written and unwritten, contains many recognitions of the fact that a judicial sale divests liens not saved by some act of assembly, yet there is no constitutional provision to that effect and research discloses no statute providing it as a general rule, much less as a rule applicable to unpaid state taxes."

By offering the foregoing quotation, respondent seems to imply that its claim is a claim for State taxes.

Cooley on Taxation offers this definition:

"Taxes are the enforced, proportional contributions from persons and property, levied by the state by virtue of its sovereignty, for the support of government, and for all public needs."

It has also been said that "A tax is generally understood to mean the imposition of a duty or impost for the support of government": Pray v. The Northern Liberties, 31 Pa. 69, 71.

In Young Men's Christian Association of Germantown v. Phila., 323 Pa. 401, 413, it was said:

"Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make)' for the support of the manifold activities of government."

In Woodward v. Philadelphia 333 Pa. 80, the court said (p. 86):

"Taxation is proportional contribution by persons or property."

We have found no definition of taxes broad enough to embrace the type of claim here involved.

But respondent's suggestion that its judgments are in the nature of a State tax is less emphatic than its assertion that they are public accounts.

It has long been the duty of some city and county officers to collect certain moneys payable to the Commonwealth. Such officers were required to file with the Commonwealth stated reports of the funds collected. Formerly these returns were made to the Auditor Gen-

eral and the State Treasurer and were settled by such officers. Under existing law these returns are settled by the Department of Revenue.

The statute provides that the procedure in such cases shall be the same as in the case of tax settlements.

It would seem that the term "public accounts", as used in The Fiscal Code, refers to accounts settled upon the returns required to be made by city and county officers. However, the term is not strictly so limited. For example, payments of liquid fuel tax in the hands of the vendor become a public account. Respondent's brief states:

"We believe the words 'public accounts' in the above statute include judgments of the nature involved in the instant case. In the case of Schoyer v. Comet Oil and Refining Company, 284 Pa. 189, 196, it was said:

" '. . . Its operation has not been confined . . . to technical accounts, but has been extended to embrace every case where one retains public money which ought to be paid into the public coffers, no matter under what appellation received. Whether called tax, or dividends, or portions of fees of office, the sums received for, and retained from the public use, fall within the purview of the act'."

Due regard for the significance of the clause "received for, and retained from the public use" compels the conclusion that the judgments here involved are not comprehended within the foregoing definition of public accounts.

In Schoyer et al. v. Comet Oil & Refining Co., supra, the court said (p. 194) :

"Section 12 of the tax and public account lien act of March 30, 1811, P. L. 145, makes the balance of every account settled a lien on all the real estate of the person indebted *from the date of settlement.*" (Italics supplied.)

"Section 1 [of the Act of 1811], requires all accounts (called public accounts in section 2) between the State and any person or corporation, revenue officer or other

person *entrusted with the receipt of public moneys*, to be examined and adjusted." (Italics supplied.)

In our opinion the above quotation defines "public accounts" as all accounts between the State and any person or corporation, revenue officer, or other person *entrusted with the receipt of public moneys*. The instant judgments, in our opinion, are not comprehended within that definition. If we concede for the moment that the instant judgments are either State taxes or public accounts, respondent nevertheless encounters the express declaration of the statute that taxes and public accounts are a lien "from the date of settlement".

In the Schoyer case, supra, the court said (p. 194) :

"The lien for taxes or moneys collected (public accounts) exists only from the date of settlement . . ."

Respondent does not claim that there has been any settlement as to its judgments.

It is conceded that all collection by the Department of Revenue need not be preceded by a settlement. Article XII of the Act of 1929 expressly provides procedure for collection of various accounts otherwise than by settlement.

In the instant matter, respondent claims a lien by virtue of section 1401 of The Fiscal Code. That section clearly requires a settlement as a condition precedent to the lien. Both the statute and the decisions declare that the lien exists only from the date of settlement.

" 'Our law of liens is well settled. It requires in all who claim a lien by legislative provision, to comply with those provisions . . .' " Wm. Wilson & Son Silversmith Co.'s Estate, 150 Pa. 285.

". . . their provisions must be complied with in order to enforce the collection of the claims of the commonwealth, when they are in hostility to the claims of lien creditors in the county where the delinquent debtor resides": Id., p. 287.

It seems altogether clear that, unless there be a settlement, no lien arises by virtue of section 1401 of the Act of 1929.

Respondent, while conceding that there was not a formal settlement of the instant account, argues:

"It is submitted that the entry of judgment on a public account and the filing of an, assessment of damages is a settlement of that account."

The statute requires settlement "in the Auditor General's office [now Department of Revenue] in Harrisburg": Commonwealth v. Central Realty Co., supra. We think that entry of a judgment in the office of the Prothonotary of Mercer County is not a compliance with the requirement. Respondent's suggestion that an assessment of damages has been made is without basis. The only instrument in the prothonotary's office in connection with the $575 judgment is the bond upon which the prothonotary entered judgment. The bond is drawn in a penal sum conditioned on the truth of representations made by Carter Irwin in connection with an application for public assistance. There is nothing to show whether the condition of the bond was broken nor whether the applicant actually received assistance. The record of the judgment for $2,000 includes merely the reimbursement agreement, upon which the prothonotary entered judgment. There is no semblance of a settlement of account in either the bond or the reimbursement agreement. It should be added, however, that petitioner does not attack the form of the judgments or dispute that, by virtue of the confession of judgment in each instrument, respondent acquired a lien upon all real estate owned by Carter Irwin on the date of entry of the judgment.

It seems obvious, however, that respondent obtained no lien upon the premises involved, by virtue of section 1401 of the Act of 1929, as amended, because respondent failed to comply with the legislative provisions which create a lien.

The judgment of $575 entered against Carter Irwin on July 5, 1939, became a lien on the premises here involved. The judgment of $2,000 entered May 7,

1940, several months after the date of the tax sale, bound only such title as remained in Irwin after the tax sale. Any lien that was created by entry of that judgment was dissipated by Irwin's failure to redeem the land. We refrain from extended discussion of the status of the $2,000 judgment because we think it immaterial, for the purposes of this case, whether that judgment when entered was a valid lien upon the premises.

Section 9 of the Act of May 29, 1931, P. L. 280, as amended by the Acts of July 12, 1935, P. L. 661, sec. 1, July 19, 1935, P. L. 1321, sec. 1, and June 20, 1939, P. L. 498, sec. 5, 72 PS §5971 (*i*), which governs sales of lands by the county treasurer for unpaid taxes, declares:

"Every such sale shall discharge the lien of every obligation, claim, lien or estate with which said property may have or shall become charged, or for which it may become liable, except no such sale shall discharge the lien of any ground rent, municipal claim or tax remaining unpaid or mortgage which shall have been recorded before such taxes became liens, by return and docketing, as herein provided, and which is or shall be prior to all other liens, except other mortgages, ground rents, municipal claims, and/or other taxes."

By reason of the above-quoted statutory provision, the tax sale of January 29, 1940, followed by the failure to redeem, discharged the land here involved from the liens of respondent's judgments entered on July 5, 1939, and May 7, 1940, respectively.

The second contention advanced by respondent is that it is entitled to priority of payment from the proceeds of the tax sale.

Petitioner disclaims any interest in the distribution of the proceeds of the sale.

Section 4 of the Act of 1931, as amended by the Act of 1939, 72 PS §5971 (*d*), provides that the proceeds

from the tax sale shall be first distributed to "liens in favor of the Commonwealth, which shall have priority to such tax liens."

We are of the opinion that we may not in this proceeding direct the distribution of the proceeds of the tax sale, notwithstanding the statutory provision last quoted. The instant proceeding is a contest between petitioner and respondent only. We are not informed as to the amount of the proceeds. The holder of the fund is not in court nor is any of the three taxing units on whose account the sale was held. In these circumstances we are constrained to refrain from entering any order of distribution.

For the reasons hereinbefore set forth, we draw the following

### Conclusions of law

1. Respondent's claims acquired no lien upon the premises involved by virtue of the Fiscal Code of April 9, 1929, P. L. 343, as amended by the Acts of June 3, 1933, P. L. 1474, and June 11, 1935, P. L. 303, 72 PS §1401.

2. The liens of the judgments entered by respondent against Carter Irwin on July 5, 1939, for $575, and on May 7, 1940, for $2,000 were discharged from the premises here involved by the tax sale of January 29, 1940, followed by failure of the taxpayer to redeem.

### Order

And now, December 9, 1943, this matter came on for argument upon petitioner's rule to show cause why the title of Joseph F. Frola should not be adjudicated and decreed valid and indefeasible as against all right or claims whatsoever upon the conveyance to the petitioner by W. E. Smith, alias Walter E. Smith, and Beatrice A. Smith, his wife.

Whereupon, after due consideration, it is ordered, adjudged, and decreed that the rule be made absolute.