## Commonwealth v. England

Before: Beckert, Bodley, Garb, JJ.

*Joseph H. Reiter,* for Commonwealth.
*Boyd England,* Propria Persona.

BECKERT, *J.,* June 8, 1976—Boyd England, respondent, has refused to honor a writ issued out of

the Office of the Secretary of Revenue of this Commonwealth, directing him to appear before Thomas J. Ryan, petitioner. Petitioner is a special investigator for the Commonwealth of Pennsylvania. The purpose of the writ, which was duly served on respondent, is to require testimony of respondent and to have him produce certain specified books, records and other data pertaining to a Vincent V. Roggio and three corporate entities. Petitioner has been assigned the examination of the Pennsylvania personal income tax liability of Vincent V. Roggio for the years 1971-73, inclusive.

Respondent was engaged in the accounting business, although he was not, and is not, a certified public accountant as that profession is defined in The C.P.A. Law of May 26, 1947, P.L. 318, sec. 1, 63 P.S. §9.1. The data sought by petitioner from respondent allegedly came into the latter's possession during the course of respondent's preparation of income tax returns for the aforementioned individual.

Respondent has refused to honor the writ, contending that the investigation being conducted by petitioner, Ryan, was for an improper purpose and unauthorized by statute, and that he (respondent) could not release the requested documents in the absence of authority from his taxpayer-client who is being investigated. At the request of the Commonwealth and Special Investigator Ryan, a rule was entered on respondent on August 4, 1975, to show cause why he should not produce the materials sought from him by use of the writ. He filed an answer and new matter, asserting the defenses set forth above.

Disposition of the petition to enforce writ of the Secretary of Revenue falls within Rule 209 of the

Rules of Civil Procedure. We find that the facts set forth in the depositions, along with the exhibits attached thereto, furnish us with ample basis for resolving the issues brought before us for argument, without need for a hearing, as was requested by the parties.

Petitioners, as authority for their claim that respondent should be judicially compelled to comply with the writ served upon him, have cited The Fiscal Code of April 9, 1929, P.L. 343, 72 P.S. §1602, and the Tax Reform Code of March 4, 1971, P.L. 6, as amended, 72 P.S. §7301, et seq. Article XVI of The Fiscal Code, of which section 1602 is a part, sets forth the inquisitorial powers of fiscal officers in this Commonwealth. Section 1602 itself is directed toward "examination and adjustment of public accounts and the collection of amounts due the Commonwealth." While we find no definition in the code clarifying what is meant by the term "public account," we believe that the legislature intended that term to be synonymous with the word "tax" or debts due the Commonwealth.

Subsection 1602(a) specifically refers to the power of the "Secretary of Revenue to settle or otherwise determine the amount of and collect taxes . . ." after which the words "public account" seem to be used broadly in lieu of detailed specific mention of taxes or other types of debts owing to the Commonwealth. Such an all-inclusive use of that term has been historically recognized by the courts: Schoyer et al. v. Comet Oil & Refining Co., 284 Pa. 189, 130 Atl. 413 (1925); Wm. Wilson & Sons Silversmith Co.'s Estate, 150 Pa. 285, 24 Atl. 636 (1892). Accordingly, we conclude that the term "public account" as used in subsection 1602(a) of The Fiscal Code encompasses taxes im-

posed under article III of the Tax Reform Act, 72 P.S. §7301, et seq.

Having established that the Department of Revenue is empowered to determine and collect taxes, we must now examine the statutory authority controlling the manner in which that power may be exercised. In addition to section 1602 of The Fiscal Code, our attention has been directed to section 361 of the Tax Reform Act of 1971, 72 P.S. §7355:

"The department, or any agent authorized in writing by it, is hereby authorized to examine the books, papers and records of any taxpayer or supposed taxpayer, and to require the production of a copy of his return as made to and filed with the Federal Government, if one was so made and filed in order to verify the accuracy of any return made, or if no return was made, to ascertain and assess the tax imposed by this article. Every such taxpayer or supposed taxpayer is hereby directed and required to give to the department or its duly authorized agent the means, facilities and opportunity for such examinations and investigations as are hereby provided and authorized. The department is hereby authorized to examine any person under oath concerning any income which was or should have been returned for taxation, *and to this end may compel the production of books, papers and records and the attendance of all persons, whether as parties or witnesses, whom it believes have knowledge of such income.* The procedure for such hearing or examination shall be the same as that provided by 'The Fiscal Code' relating to inquisitorial powers of fiscal officers." (Emphasis supplied.)

Read together, the aforementioned statutes clearly empower the Secretary of Revenue to

examine any taxpayer's books, papers and records, and to procure such person's attendance, along with exhibition and delivery of relevant documents, by means of an appropriate writ. Neither limits the secretary to service of a summons upon the taxpayer being investigated, but rather authorizes examination of any persons who are believed necessary as witnesses or who are believed to have knowledge of the said taxpayer's income. In the instant case, respondent appears to be such a person, inasmuch as he has admitted having prepared the taxpayer's income tax returns and acknowledges that he possesses papers, documents and information relevant to an examination thereof.

While we have not been able to find any case law in this Commonwealth to support our conclusion that respondent should produce the records for the purpose now sought, we do note a similarity between the Tax Reform Act of 1971 (§7355) and the Federal statute authorizing the production and examination of books and records for tax purposes (Act of August 16, 1954, c. 736, 26 U.S.C. §7602, 68A Stat. 901), which Federal act also includes provisions similar to those found in section 1602 of our Fiscal Code (72 P.S. §1602) which, as stated, provided for compulsory production of "books, papers, records or other data" which may be relevant to the examination of a tax return.

As can well be imagined, the Federal courts have on numerous occasions dealt with the problem of involuntary production of records and testimony in the possession of accountants when dealing with Federal tax examinations (Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L. Ed. 2d 548 (1973); Donaldson v. United States,

400 U.S. 517, 91 S.Ct. 534, 27 L. Ed. 2d 580 (1971); United States v. Fisher, 500 F. 2d 683 (3rd Cir., 1974)), and have consistently held therein that the accountant's records must be produced when a summons has been so issued.

Turning our attention to the problem of the alleged confidential privilege as asserted by respondent, we fail to find any support for his position. There is no common law accountant-client privilege in Pennsylvania: United States v. Bowman, 358 F. 2d 421 (3d Cir., 1966). Unless there exists some specific statutory privilege which prohibits his disclosure of the materials and facts possessed by him, then respondent is legally obligated to honor the direction of the writ served upon him. We find no such privilege. In the C.P.A. Law there exists a provision that information obtained by a certified public accountant as a result of the rendering of his professional services is deemed confidential and privileged: Act of May 26, 1947, P.L. 318 added September 2, 1961, P.L. 1165, 63 P.S. §9.11a. However, respondent here contends, and there is no evidence to the contrary, that he at all times in question was not "certified" within the definitional meaning of the C.P.A. Law and that fact appears to negate the only claim of privilege which might otherwise be available to him.

Federal cases dealing with the compulsory production of an accountant's papers are numerous. It is apparent from a reading of these cases that no confidential accountant-client privilege exists under Federal law and no State created privilege has been recognized in these Federal cases: Falsone v. United States, 205 F. 2d 734 (5th Cir., 1953), cert. denied 346 U.S. 864 (1963); Gariepy v. United States, 189 F. 2d 459 (6th Cir., 1951);

Himmelfarb v. United States, 175 F. 2d 924 (9th Cir. 1949), cert. denied 338 U.S. 860 (1949).

Respondent has also challenged the authority of petitioner, Ryan, as special investigator of the Office of Drug Law Enforcement to exercise the powers of examination set forth in section 1602 of The Fiscal Code supra. However, we feel that the record clearly demonstrates that Ryan was acting as the authorized agent of the Secretary of Revenue by virtue of an agreement which existed between the Department of Justice, having supervisory powers over the Office of Drug Law Enforcement, and the Department of Revenue, enabling the latter to utilize as its agents the former's investigating unit for the purpose of making "in-depth tax and financial investigations." This working arrangement between the two departments was spelled out in depth in a letter dated July 14, 1975, from the Secretary of Revenue to the Attorney General, and accepted and agreed to by the latter on July 16, 1975. The authenticity of that letter agreement, attached as an exhibit to the depositions of petitioner, Ryan, has not been challenged by respondent, and in its last paragraph the letter states that the policy of interdepartmental cooperation discussed therein has been in effect since March 11, 1974. Both The Fiscal Code, 72 P.S. §1601, and the Tax Reform Code, 72 P.S. §7355, expressly allow the Department of Revenue to conduct its examinations through means of its authorized agents, and we believe the procedure followed here complied with the spirit and intent of those sections.

We should note in passing that there appears to be no Pennsylvania case authority outlining the scope of investigatory powers which exist inci-

dental to the Commonwealth's income tax laws. However, our foregoing reasoning appears to be harmonious with the Third Circuit Federal court decisions which have recognized the need of the Internal Revenue Service to compel production of information concerning taxpayers where it can be demonstrated that such information is necessary for some proper purpose: United States v. Bowman, supra; United States v. Berkowitz, 355 F. Supp. 897 (E.D. Pa., 1973), affirmed per curiam 488 F. 2d 1235 (3d Cir., 1973).

## ORDER

And now, June 8, 1976, it is hereby ordered and decreed that respondent, Boyd England, be hereby directed to obey the writ served upon him by appearing for examination and producing books, records and papers as required by said writ before Special Investigator Thomas J. Ryan or any other proper officer designated by the Secretary of Revenue on a date certain to be fixed by the Commonwealth, provided, however, that respondent be given ten days advance notice of the time and place. Respondent is further directed to pay the costs of these proceedings.