## Barncord *versus* Kuhn.

*It seems*, that a conveyance of land, by a father to his daughter and her husband, which is intended as an advancement or gift to the daughter, vests no estate in the husband, except as a trustee for his wife.

Such a deed may be surrendered to the grantor and cancelled, and a new conveyance executed to the wife alone; and a judgment-creditor of the husband, whose judgment was obtained prior to the delivery of the first conveyance, though subsequently to its date, cannot impeach the transaction, as a fraud upon his rights.

The surrender of such a deed, with the intention. of securing to the wife that which was originally intended as a gift to her, being in furtherance of the objects of the Act of 1848, cannot be deemed fraudulent, under the statute of Elizabeth, as against the husband's creditors.

Such deed, being without other consideration than natural love and affection, only takes effect from the time of its delivery; and the estate of the husband, if any be thereby vested in him, is not bound by the lien of a prior judgment.

Where there is a contract of purchase, or an equity of any sort pre-existing in the grantee, the law will, in behalf of creditors, carry back the delivery, by relation, to the date of the deed; in other words, a judgment against a party having an equitable interest in lands, opens to let in the legal title when it vests in the debtor. But the law is otherwise, as to a voluntary conveyance; delivery, in such case, is essential to vest any interest in the land.

The husband's possession of his wife's property, is not a badge of fraud.

In ejectment against husband and wife, for the undivided moiety of a tract of land, an amendment may be made, on the trial, striking out the wife's name as a defendant, and claiming the entire tract. A husband may defend his possession under his wife's title.

ERROR to the Common Pleas of *Franklin county.*

This was an ejectment brought by Isaac Kuhn against Jacob Barncord and Rebecca his wife, originally, to recover the undivided moiety of a tract of 82 acres of land, in Montgomery township, Franklin county. On the trial, the court below, notwithstanding an objection by the defendants' counsel, permitted the record to be amended, by striking out the name of Mrs. Barncord as a defendant; and by extending the plaintiff's claim to the entire tract.

Robert Davis, the father of Mrs. Rebecca Barncord, was the owner of considerable real estate in Franklin county. In 1853, he had it surveyed into five equal parcels, and, on the 14th January in that year, he executed deeds to his five daughters and their husbands for the respective parcels. The conveyance to Barncord and wife embraced the land in controversy. These deeds, with the exception of the one to Barncord and wife, were delivered at the time of their execution; but this one he retained in his possession until the summer of 1856, when he sent it, by one of his

granddaughters, to the defendant's wife, with instructions to hand it to her mother—not to give it to her father—as he did not intend him to have any interest in the land.

At this time, the defendant was in the West, having deserted his wife and children (as was generally supposed) with the intention of never again returning to them. He did return, however, in the fall of 1856, and obtained possession of the deed; but shortly afterwards, a quarrel occurred between him and his wife about the deed, and, in order to end the controversy, she destroyed it, by tearing it into fragments.

Barncord took the pieces to a neighbouring magistrate, and procured him to write a new deed, like the first one. This deed was executed by Davis, and delivered to the defendant and his wife, in September or October 1856. A short time afterwards, this second deed, with the assent of the grantor, and both of the grantees, was cancelled and destroyed; and, on the 14th April 1857, Davis executed a new deed for the premises to Mrs. Rebecca Barncord, with her husband's full knowledge and consent. This deed was delivered to the wife at the time of its execution.

On the 10th April 1854, Isaac Kuhn, the plaintiff, as executor of Jacob Barncord deceased, the ·defendant's father, obtained a judgment against Jacob Barncord, the defendant, for $995.60. This judgment was revived by *scire facias* on the 4th June 1857, for $1095.82; and on it, the plaintiff issued an execution, levied on the land in dispute, and became the purchaser thereof at the sheriff's sale. Mrs. Barncord caused a notice of her claim to the land to be given at the time of the sale.

It was proved on the trial, that Davis had declared, on many occasions, that he did not intend Barncord should have any interest in this land, but that it was to be an advancement to his daughter Rebecca, for the support and maintenance of herself and children.

The court below (KIMMELL, P. J.) delivered the following charge to the jury :—

" The title is admitted in Robert Davis, and the plaintiff alleges that Davis conveyed the land to the defendants, by a deed dated 14th January 1853. The plaintiff, as executor of Jacob Barncord, deceased, obtained a judgment in this court against Barncord, one of the defendants, on the 3d of April 1854, for $203.81; this judgment was revived by *sci. fa.*, and judgment entered 4th June 1857, for $221.41. The plaintiff also obtained judgment in this court against Jacob Barncord, 10th April 1854, for $995.60. This judgment was. also revived, by *sci. fa.*, and judgment entered the 4th June 1857, for $1095.82. Upon this last judgment, writs issued, and this land was regularly levied and sold by the sheriff to the plaintiff, to whom a deed was duly acknowledged and delivered, the 29th October 1858. It is upon this title that the plaintiff claims, and he

[Barncord v. Kuhn.]

will be entitled to your verdict, if you believe that Davis conveyed to these defendants, as is alleged, unless the title to this property is in the wife, by the deed from Davis to her of the 14th April 1857.

"If the evidence is believed, Davis made and delivered three deeds for the property in dispute; one on the fourteenth January 1853, it is said, to the defendants, their heirs and assigns, by entireties; the second in September or October 1856, drawn like the first; and the last, 14th April 1857, giving the estate to the wife alone. To make these deeds available for any purpose, they must have been delivered. It is said, this was done. That the grandfather sent the first by the granddaughter, with express instructions to deliver it to the mother. This was in the spring of 1856, the husband being then absent on a visit to the West. Squire Rowe testifies that he made a deed from the fragments of the one torn. That Davis acknowledged it before him in the fall of 1856, in the month of September or October, and delivered it, as soon as executed, to Barncord. The presumption of law is, that the last was delivered at its date, as it comes from the possession of defendants.

"If the jury find from the evidence that these deeds had an existence, and the one was destroyed by the wife in the fall of 1856, and the second one by the husband, or that, being in possession of it, he refused to produce it, then they will say what were the contents of these papers, from the evidence, parol and written, in the case.

"Mr. Auld says that he has the 'fragments,' but that the mice have eaten them so as to render them illegible. As to the second deed, traced into Barncord's hands, he was notified to produce it, and it is not forthcoming. It is said, it was handed back to Davis when the last was made. The executors, after a thorough search amongst the papers of Davis, cannot find it. If the existence and destruction of the papers is made out, the jury will ascertain, from the other evidence, what was the nature of the conveyances. Did Davis convey the land in dispute to Jacob Barncord and Rebecca his wife, and to their heirs and assigns for ever? and were they delivered? A delivery to the wife of the first deed was a delivery to the husband. The plaintiff says, that if these facts are established, this estate became vested in Jacob Barncord, and he could not thereafter destroy, surrender, or revoke the deeds, without the consent of the creditors, unless he left other property sufficient to pay these debts; and that this creation and destruction of deeds was intended to prevent the recovery of the plaintiff's judgments. Thus, the first deed, if established, was made 14th January 1853, and delivered in the spring of 1856; the judgments were entered 3d April 1854. In the fall of this year, the husband announces the destruction of the deed;

[Barncord *v.* Kuhn.]

another is made and delivered in September or October; the *sci. fas.*, issued 19th November 1856, were served 29th November 1856; then the second deed disappears; and the last one comes upon the stage 14th April 1857, and judgments of revival are entered 4th June 1857.

"The answer to this is, that the deeds were revoked by all the parties thereto, and that they had the right to do so. If the first deed was made 14th January 1853, conveying the estate to Jacob Barncord and Rebecca his wife, and their heirs, then they took by entireties, and if it was delivered in the spring of 1856, then the estate vested from the date of the deed, and when this plaintiff entered his judgment 3d April 1854, it was a lien on the land, and as that lien was continued, the title conveyed by the deed to Barncord, passed by the sheriff's deed to the plaintiff, and he must recover. The subsequent movements of Barncord and his wife cannot affect his rights. If you should believe that the second deed only is established, I mean the one testified to by Rowe, as made in September or October 1856, although the judgments were not then a lien, the *sci. fas.* having issued in November 1856, yet if it conveyed the land to Jacob Barncord and wife, and their heirs and assigns, and it was in your opinion destroyed to prevent plaintiff from obtaining a lien upon the land, and thus securing his money, the plaintiff will be entitled to recover. The sale conveyed all the interest of Jacob Barncord to the plaintiff, and if this second deed is established by the evidence, then the estate was vested, and the defendant Barncord could assent to no act which would take the land from his creditors, unless he left other sufficient property for the payment of his debts; on this point there has been no evidence offered; but there remains due to the plaintiff, on the judgments, something above $1000.

"The testimony of Squire Auld, in relation to the instructions given as to the manner of writing the deeds, cannot affect the case, because he says that some three years after, when the deed came to be signed, it was read or explained to Davis by Squire Boyd, and signed without a word of objection.".

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiff, for the whole of the tract, the defendant removed the cause to this court, and here assigned for error: 1. The allowance of the amendment on the trial: 2. The charge of the court to the jury.

*Reilly & Sharpe*, for the plaintiff in error.—The parties to the first two deeds being *sui juris*, it was perfectly competent for them to cancel the deeds, for the purpose of divesting the estate of the grantees; and this having been done by common consent, and a new deed executed to the defendant's wife, there was no

[Barncord v. Kuhn.]

interest in him, which could pass by the sheriff's sale: Wiley v. Christ, 4 *Watts* 196; Goucher v. Martin, 9 *Id.* 106; Boyce v. McCulloch, 3 *W. & S.* 429; McKinney v. Reader, 7 *Watts* 123; Myers v. Myers, 1 *Casey* 100; Raffensberger v. Cullison, 4 *Id.* 426. The court erred in charging the jury that the defendant could not consent to the destruction of the deed, unless he left other sufficient property to pay his debts. The burden of proof was on the plaintiff, to show the insolvency of the defendant. It is not indebtedness alone, but the peril of insolvency, and the consequent risk of loss to the creditors, that makes voluntary conveyances void: Miller v. Pearce, 6 *W. & S.* 101; Posten v. Posten, 4 *Wh.* 40; Chambers v. Spencer, 5 *Watts* 410; Mateer v. Hissim, 3 *Penn. R.* 166.

The defendant below had no estate in the land at the time of the entry of the plaintiff's judgment; the deed was not then delivered, and a voluntary deed only vests an interest from the time of its delivery: 1 *Bl. Com.* 307; 1 *Shep. Touch.* 122; 4 *Co.* 4.; 4 *Cruise* 27; Van Amringe v. Morton, 4 *Wh.* 387; Jackson v. Schoonmaker, 2 *Johns.* 235; Fairbanks v. Metcalf, 8 *Mass.* 230; Hatch v. Hatch, 9 *Id.* 307; Harrison v. Trustees of Phillips' Academy, 12 *Id.* 463.

*McLellan & McClure*, for the defendant in error.—It was not for the defendants to divest their estate by the destruction of the deed of conveyance; and a married woman especially could not thus divest her title; she could only do so in the mode prescribed by statute: Brown v. Bank of Chambersburg, 3 *Barr* 202; Wiley v. Christ, 4 *Watts* 197; Raynor v. Wilson, 6 *Hill* 469. And it is well settled, that the defendant could do no act, which would take the land from his creditors, unless he left other sufficient property for the payment of his debts: Chambers v. Spencer, 5 *Watts* 410; Mateer v. Hissim, 3 *Penn. R.* 164.

There was a sufficient delivery of the first deed in 1853, to vest the title in the defendant. The intention of the parties, collected from all their acts and declarations, determines the fact of delivery: Arrison v. Harmstead, 2 *Barr* 193; *Shep. Touch.* 57–8; 1 *Penn. R.* 43; Garnons v. Knight, 5 *B. & C.* 471; Lloyd v. Bennett, 8 *Car. & P.* 124; Blight v. Schneck, 10 *Barr* 290; 1 *Johns. Cas.* 250; Jaques v. Methodist Episcopal Church, 17 *Johns.* 548.

The opinion of the court was delivered by

WOODWARD, J.—It is very material to any view that can be taken of this case, to bear constantly in mind, that the consideration of each of the three deeds made by Robert Davis for the land in suit, moved from his daughter, Mrs. Barncord, the wife of the defendant below, now plaintiff in error. It was because she was

his daughter, that Mr. Davis made those deeds. He intended the land as a gift or advancement to her. Barncord paid nothing for the land—had no contract for it—and any interest that vested in him was created solely by the conveyances, and depends on sheer law without the slightest equity for its support. These are conclusions of fact, not established by the trial, and therefore only hypothetically put by us—but apparently justified by the record before us.

The plaintiff below purchased Barncord's title at sheriff's sale, with express notice from the wife, that the title was in her and not in her husband. The date of the writs under which the sheriff made the sale is not furnished in the paper-books, but his deed was acknowledged 29th October 1858, and the writs which seized and sold the land must have been issued after the 4th June 1857, for that is the date of the revival of the judgment on which the writs issued and the sale was made.

Before the 4th of June 1857, to wit, on the 14th April 1857, Barncord and wife had surrendered to Davis the joint conveyance they held from him, and he had made a new deed to his daughter, Mrs. Barncord, in fee, for the land. It is, therefore, true, as Mrs. Barncord's notice imported, that the title was in the wife, not only at the time of the sheriff's sale, but when the *fi. fa.* was levied and the judgment revived. Without title when the plaintiff revived his judgment, levied his *fi. fa.*, and purchased at the sheriff's sale, had Barncord any title when the plaintiff's original judgment was entered? We shall see.

The original judgment was entered 10th April 1854, and revived as above stated on the 4th June 1857. In 1853, Davis determined to divide his real estate among his five daughters and their husbands, and on the 14th January 1853, executed five deeds to his daughters and their husbands, as tenants in common, for their respective parts. Four of the deeds were delivered, but the one intended for Barncord and wife was not delivered, until some time in 1856, and then it was delivered very particularly to the wife, and not to the husband. Miss Rebecca Barncord, a daughter, was the medium of delivery, and she says: "I received deed from grandpa; father was in the West at the time; grandpa said I should take it home, and give it to mother; said I should not give it to father, as he should not have it; I gave it to mother; she put it in a drawer; father returned from the West, some three or four months afterwards; this was in 1856."

Now, notwithstanding the qualified terms of this delivery, the learned judge decided that it was a good delivery to the husband. Let it be granted. Did the title vest before the delivery? The learned judge said it vested from the date of the instrument. In this we cannot agree with him. Had there been a contract of

purchase, or an equity of any sort pre-existing in Barncord, the law would, in behalf of creditors, carry back the delivery by relation to the date of the deed; in other words, a judgment against a party having an equitable interest in lands opens to take in the legal title when that vests in the debtor.   But it must be remembered, that Barncord had no interest whatever in the land till the deed conferred it; and surely that could confer no interest till it was delivered.

Delivery is essential to the effect of every deed, and most of all of this deed, which, though made to the debtor and his wife, was not designed, apparently, for the benefit of the debtor or his creditors, but for the use and benefit of a married woman.   Had Davis been properly advised, he would have known, that he could convey a separate estate to his daughter, which the Act of 1848 would protect from the husband's creditors.   But he probably thought it was necessary to introduce Barncord's name into the deed, to make his bounty to his daughter effectual.   The deed vested an estate in both from the time of its delivery, but only from the time of delivery, and as that was two years subsequent to the original judgment, it was not bound by that judgment.

Barncord returned from the West in September 1856, and in a quarrel with his wife she tore this deed into pieces.   A new deed, similar to the first, was prepared, executed and delivered in September or October 1856.   This deed was delivered to Barncord, but the interest it vested was not bound by the lien of plaintiff's judgment, for the same reason that applies to the former deed. Sometime after this, all parties agreed to a surrender of this deed to the grantor, and he then, on the 14th April 1857, executed a conveyance directly and exclusively to his daughter, her heirs and assigns.   Such was the state of the title, when the judgment of 1854 was revived in June 1857, and such was the state of it when the levy and sale were made.

Now, undoubtedly, the surrender of the second deed by Barncord would be fraudulent and void as against any creditor, whose lien attached whilst the title was in him, but we have seen that no lien attached during that time.   It would be fraudulent also, as to creditors in general, if the object and purpose of it were not to secure the title to his wife, agreeably to the original intention of the grantor.   But if such were the object of the surrender, it cannot be treated as fraudulent, because, by the Act of 1848, "property which shall accrue to any married woman, during coverture, by will, descent, deed of conveyance, or otherwise, shall not be subject to levy and execution for debts and liabilities of the husband."   Whatever was necessary to effectuate the objects of the Act of 1848, in respect to property accruing to her, could not be void under the statute of Elizabeth.

[Barncord *v.* Kuhn.]

The distinctions here are a little nice, and, therefore, should be carefully stated. We guard the rights of creditors against all concealments and conveyances by the debtor, which tend to hinder and delay his creditors. Such conveyances, however formal, and however valid as between the parties, are void as to the creditors of the grantor, and a parol surrender of an existing title would be readily set aside in behalf of creditors. But why? In order, I answer, that the creditors may have the benefit of the debtor's estate in the land. But an estate accruing to a married woman since the Act of 1848, is hers exclusively, and is not subject to her husband's debts. His creditors are peremptorily forbidden to seize such an estate. How can they be defrauded then by his surrender. of a deed made for his wife's benefit? Had there been no surrender of that deed, if Barncord held it still, it would have been competent for his wife to show that her father gave her the land because she was his daughter; that no consideration moved from her husband to her father, and that the husband held merely as her trustee. Whilst creditors are to be protected against all attempts of debtors to shuffle their property out of sight, married women are equally entitled to the panoply of the statute, as against the creditors of debtor husbands. In a word, creditors are to look to the husband's estate for satisfaction, and not to the wife's.

And to determine the equitable ownership, we always inquire into the consideration of the deed. If Barncord had bought this land with money of his wife, and taken the deed in his own name, he would have been treated as her trustee, and his creditors would have been restrained ·from seizing · it. No less was he trustee whilst he held the second deed of Davis, if that was made as a gift to Mrs. Barncord. And a surrender of his trust, even by parol, would conclude him and others claiming under him.

If the deeds were made to Barncord and wife, on no other consideration than as an advancement to the wife; and if Barncord consented to the surrender and cancellation of the second deed, the better to enable his wife's father to convey the estate directly and exclusively to her; and if the third deed was made in execution of the parental intention to advance the daughter, then we say that neither the husband nor his creditors are competent to impeach the transaction. In all this, there was no fraud, legal or actual, upon creditors. On the other hand, they would perpetrate a grievous fraud upon the rights of a married woman, if permitted to convert her estate, so assured, to the payment of her husband's debts.

We do not trouble ourselves with the difficult question, whether, since the Act of 1848, ·husband and wife, under a deed to them jointly, take by entireties or by moieties, for, until the cause is tried upon the questions of fact which we have indicated touching

[Barncord *v.* Kuhn.]

the consideration of the several conveyances made by Davis, we shall not be satisfied that Barncord had any interest whatever in the land.   The plaintiff was bound, both as creditor and purchaser, to take notice of the wife's equities, for neither when his judgment was obtained, nor when it was revived, nor when his execution issued, had Barncord any trace of a title.   The only ground the plaintiff has to stand on is, that Barncord, having had an interest, disposed of it in fraud of creditors, and that leads to the inquiry into the consideration, when, if it turns out, as we suppose it will, from what is before us, that from first to last, nothing was intended except a parental gift to a married woman, the plaintiff took nothing by the sheriff's sale, and had no right to a verdict and judgment in his favour.

The action was brought against Barncord and wife, but on the trial her name was stricken out, on motion of the plaintiff's counsel. Under the statutes of amendment, we think the court had the right to allow this motion.    But the question in the cause was not changed by this amendment.   Barncord could defend his possession under the title of his wife.   We have always held, that the husband's possession of the wife's separate estate, whether real or personal, was lawful, and not a circumstance indicative of fraud.

The judgment is reversed, and a *venire facias de novo* is awarded.